UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHEN T. MUGGLEBEE, an individual,<br><br>                               Plaintiff,<br><br>v.<br><br>ALLSTATE INSURANCE COMPANY, and DOES 1 thru 25, inclusive,<br><br>                           Defendants. | Case No.: 14-CV-2474 JLS (JMA)<br><br>**ORDER GRANTING PLAINTIFF'S UNOPPOSED MOTION FOR APPROVAL OF SETTLEMENT**<br><br>(ECF No. 76) |

Presently before the Court is Plaintiff Stephen T. Mugglebee's, through his guardian *ad litem*, Unopposed Motion for Order Approving Settlement. (ECF No. 76.) Plaintiff seeks an order approving the proposed settlement and approving various fees and costs. ("MTN," ECF No. 76-1, at 10.) The Court took the matter under submission without oral argument pursuant to Civil Local Rule 7.1(d)(1). Having considered Plaintiff's unopposed Motion and the law, the Court **GRANTS** the Motion, (ECF No. 76).

## BACKGROUND

This cases arises from an insurance claim by Plaintiff against Defendant Allstate Insurance Company. (MTN 2.) On January 23, 2013, a water line burst in Plaintiff's house causing extensive damage to both the home itself and personal property within the home. (*Id.*) The water damage left the home uninhabitable. Disputes between Plaintiff and his

insurance company arose, resulting in Plaintiff filing suit in California Superior Court alleging mishandling of the claim. (*Id.*) Estimates for the cost of repair ranged from $70,000 to $150,000, which the parties disputed. (*Id.*) During the dispute, Allstate made a number of payments under the policy totaling $68,338.65. (*Id.* at 2 n.1). The matter was removed from state to federal court on October 17, 2014. (ECF No. 1.)

On March 28, 2016, Plaintiff filed his Second Amended Complaint, (ECF No. 48), and as the parties were preparing for discovery, Plaintiff suffered a series of debilitating strokes. (*Id.* at 3.) On March 21, 2017, the Court approved appointment of a guardian *ad litem*. (ECF No. 65.) The parties entered into private mediation and on May 25, 2017, the parties settled. (MTN. 3.) On August 28, 2017, the subject property was sold and all liens and outstanding mortgage debt on the property were satisfied. (*Id.* at 6; *see also* Ex. F, ECF No. 76-3 (containing the Substitution of Trustee and Full Reconveyance and Grant Deed).)

The terms of the Settlement Agreement, (*see* Ex. A, ECF No. 76-3), are as follows. Defendant Allstate shall pay Plaintiff $170,000.00 over and above amounts previously paid, on or before thirty (30) days after this Court approves the settlement and satisfaction of all liens. (MTN 3.) Payment will be made to Winters & Associates' Client Trust Account and any lienholders whose liens have not been released. (*Id.* at 4.) The settlement fully discharges all of Plaintiff's claims and causes of action and includes an express waiver of California Civil Code § 1542. (*Id.*)

Additionally, Plaintiff's counsel requests the Court approve attorney's fees in the amount of $51,395.00. (*Id.* at 7.) Plaintiff's counsel entered into a written fee agreement with Plaintiff providing for payments by Plaintiff on a regular basis. (*Id.*) However, after Plaintiff's stroke, Plaintiff's counsel has received no payments since March 28, 2016. (*Id.*) Plaintiff's Guardian *Ad Litem* has reviewed the requested fee and found it reasonable. (*Id.*) Plaintiff's attorney requests remaining litigation costs in the sum of $3,697.00 (this is the net remaining cost; total litigation costs incurred were $17,127.00, of which $13,430 has already been paid). (*Id.* at 9; *see also* Ex. J, ECF No. 76-3.) Plaintiff owes $2,937.50 to

Steve Hill Construction Consulting, Inc. for estimates for home repairs. (MTN 9.) Finally, Plaintiff requests that his Guardian *Ad Litem* receive reimbursement for costs in the amount of $4,275.00. (*Id.*)

## LEGAL STANDARD

District courts have a special duty to protect the interests of litigants who are incompetent. *See* Fed. R. Civ. P. 17(c); *Robidoux v. Rosengren*, 638 F.3d 1177, 1181 (9th Cir. 2011). Rule 17(c) requires a district court to appoint a guardian *ad litem* to protect an incompetent person who is unrepresented in an action. Fed. R. Civ. P. 17(c). In the context of guardians for minors, the Ninth Circuit has instructed district courts to "conduct [their] own inquiry to determine whether the settlement serves the best interests of the minor." *Robidoux*, 638 F.3d at 1181 (quoting *Dacanay v. Mendoza*, 573 F.2d 1075, 1080 (9th Cir. 1978); *see also Salmeron v. United States*, 724 F.2d 1357, 1363 (9th Cir. 1983) (holding that "a court must independently investigate and evaluate any compromise or settlement of a minor's claims to assure itself that the minor's interests are protected, even if the settlement has been recommended or negotiated by the minor's parent or guardian ad litem"). District courts have applied the *Robidoux* inquiry to cases involving settlement approval for incompetent persons. *See, e.g.*, *Smith v. City of Stockton*, 185 F. Supp. 3d 1242, 1243 (E.D. Cal. 2016).

District courts must limit their scope of review to whether the net amount distributed to each plaintiff is fair and reasonable, in light of the facts of the case, the plaintiff's specific claim, and recovery in similar cases. *Robidoux*, 638 F.3d at 1181–82. Courts should not evaluate the fairness of the recovery by comparing the incompetent person's proportion of total settlement value to the amount designated for competent co-plaintiffs or plaintiff's counsel. *Id.* at 1182. "So long as the net recovery to each minor [or incompetent] plaintiff is fair and reasonable in light of their claims and average recovery in similar cases, the district court should approve the settlement as proposed by the parties." *Id.*

The *Robidoux* court expressly limited its holding to a minor's federal claims and did "not express a view on the proper approach for a federal court to use when sitting in

diversity and approving the settlement of a minor's [or incompetent's] state law claims." *Id.* at 1179 n.2. District courts, however, have found *Robidoux* applicable in state law claims. *See Mitchell v. Riverstone Residential Grp.*, 2013 WL 1680641, at *1 (E.D. Cal. Apr. 17, 2013) (collecting cases).

## ANALYSIS

### I. Plaintiff's Net Recovery

Plaintiff's proposed settlement amount is $170,000. Total costs and fees are $62,304.50 ($51,395 attorney's fees + $3,697 litigation costs + $2,937.50 construction estimate + $4,275 guardian *ad litem* costs). Plaintiff's net amount from the settlement is $107,695.50 ($170,000.00 – $62,304.50). Allstate Insurance previously paid $68,338.65 on the undisputed portion of the loss. Thus, Plaintiff's total net recovery from Defendant will be $176,034.15 ($107,695.50 + 68,338.65).

The cost estimates for Plaintiff's property damage ranged from $70,000 (Defendant's estimate) to $150,000 (Plaintiff's estimate). (MTN 2.) Thus, if the Court assumes that the largest cost estimate is true—$150,000—Plaintiff's total recovery exceeds this sum. That is, Plaintiff's settlement amount ($107,695.50) and the amount Allstate previously paid ($68,338.65) exceed the cost estimate by $26,034.15 ($176,034.15 received by Plaintiff – $150,000 cost of damage). This recovery excludes attorney's fees and costs. Furthermore, Plaintiff's mortgage was retired from the proceeds of the sale of the property, which means there appear to be no hidden costs that would further reduce the amount owing to Plaintiff.

As required by *Robidoux*, 638 F.3d at 1181, the Court must consider the outcomes of similar cases to determine if the proposed settlement is reasonable. After extensive search, the Court cannot find any case in this circuit, or even nationally, that closely resembles the factual scenario presented here. For their part, the parties have not directed the Court to any similar cases. Accordingly, the Court endeavors to find similarities in the case law and uses its reasoned judgment where appropriate. As an initial matter, there are two critically important facts that undergird the Court's analysis. First, all parties agree to

4

the settlement terms, which was negotiated through arm's length private mediation. Second, Plaintiff will recover more from the settlement than the highest property damage assessment.

Plaintiff brought breach of contract claims. (*See* ECF No. 1-2.) He alleged that his insurance policy provided "Dwelling Protection" up to a limit of $511,342 and "Personal Property Protection" up to $383,507. (*Id.* ¶ 6.) The policy covered Plaintiff's dwelling and personal property on a replacement cost basis, which means that Plaintiff would be entitled to recover the full cost to repair, rebuild, or replace the damaged covered property. (*Id.*) The policy also provided additional protection including "additional living expense" for increases in Plaintiff's living expenses while the residence was uninhabitable. (*Id.* ¶ 7.)

In *Chance v. Prudential Insurance Co. of America*, No. 15-cv-1889-DAD-JLT, 2016 WL 3538345, at *2 (E.D. Cal. June 29, 2016), the district court examined whether a proposed settlement agreement was in a minor's best interest. There, the plaintiff filed suit for breach of contract against an insurance company arising from a dispute as to whether benefits from a life insurance policy would be paid to the surviving spouse (the plaintiff) or to the decedent's three surviving children. *Id.* at *1. The parties, including the spouse/plaintiff, settled and agreed that the death benefit would be paid to each of the three surviving children, but not to the surviving spouse. *Id.* at *2. The district court found:

> [T]he proposed settlement agreement provides that defendant . . . will pay each of [the decedent's] surviving children a one-third share of the death benefits under the life insurance policy at issue. Thus, each minor will receive an *amount similar to that to which she would likely be entitled as a beneficiary under the plan*, in the absence of a qualified surviving spouse or registered domestic partner.

*Id.* (emphasis added). The district court concluded that the proposed settlement was fair and reasonable. *Id.*

The facts in the present case are obviously distinguishable—*Chance* dealt with a life insurance policy and Plaintiff's claim arises out of a dwelling and personal property policy. However, the Court finds persuasive the *Chance* court's reasoning that each minor would

be entitled to an amount similar to that which she would be entitled as a beneficiary under the plan. Here, the proposed settlement will compensate Plaintiff for all damages to real property and exceed the highest cost estimate by $26,034.15. Thus, not only is Plaintiff receiving what he would be entitled to under his insurance policy, but he will receive an additional sum above and beyond the policy.[1]

Accordingly, the Court finds the proposed settlement to be fair and reasonable.

## II. Attorney's Fees

The *Robidoux* court held that district courts should not place undue emphasis on the amount of attorney's fees when determining the plaintiff's recovery under a proposed settlement. 638 F.3d at 1181–82. This Court determined that the proposed settlement was fair and reasonable, without reference to attorney's fees (except to determine Plaintiff's net recovery). The *Robidoux* court did not mandate a specific standard to evaluate the reasonableness of attorney's fees. Civil Local Rule 17.1.b.1 requires that any money recovered by an incompetent California resident by settlement must be paid and disbursed in accordance with California Probate Code section 3600, *et seq.* In turn, California Probate Code section 3601 authorizes a court to direct that reasonable guardian expenses, costs, and attorney's fees be paid from the money to be delivered for the benefit of the person with a disability. *See also Goldberg v. Sup. Court*, 23 Cal. App. 4th 1378 (Ct. App. 1994) (noting that § 3601 "bestows broad power on the court to authorize payment from the settlement-to say who and what will be paid from the [incompetent person's] money—

---

[1] The Court notes that Plaintiff's Second Amended Complaint requested a higher amount in damages than what Plaintiff will recover by the proposed settlement. (*See* ECF No. 48, at 25–26 (requesting $300,000 in compensatory, incidental, and consequential damages as well as additional sums in punitive damages and attorney's fees).) However, an amount offered in settlement incorporates the uncertainties of going to trial and proving all elements. For example, in the context of the approval of a class action settlement, the Ninth Circuit affirmed a district court's finding of one-sixth of potential recovery as fair and adequate. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000), *as amended* (June 19, 2000); *see also Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 628 (9th Cir. 1982) ("It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair."). Therefore, the fact that Plaintiff's recovery here will be a fraction of his requested recovery does not render this settlement inadequate or unfair.

as well as direct certain individuals to pay it"). Because the Civil Local Rules direct the Court to California statute, the Court applies California law to evaluate the reasonableness of attorney's fees, guardian expenses, and other costs.

When a lawyer represents an incompetent person and recovers funds by way of settlement, California law requires a court to inquire into the reasonableness of attorney's fees and costs. *Ojeda v. Sharp Cabrillo Hosp.*, 8 Cal. App. 4th 1, 17 (Ct. App. 1992) (citing Cal. Prob. Code §§ 3600–01). "Under California law, an insurer who wrongly refuses to pay a claim must compensate the insured for all damages caused by the refusal. When that refusal forces the insured to litigate when he ought not to have been required to go to court, necessary and reasonable counsel fees are part of his compensatory damages." *Biundo v. Old Equity Life Ins. Co.*, 662 F.2d 1297, 1299 (9th Cir. 1981) (citing, e.g., *Mustachio v. Ohio Farmers Insurance Co.*, 44 Cal. App. 3d 358, 364 (1975)). "However, recovery of counsel fees may not exceed the amount attributable to the attorney's efforts to obtain the rejected payment due on the insurance contract." *Id.*

Plaintiff's counsel requests fees in the amount of $51,395.00. (MTN 7.) In total, Plaintiff's counsel, Mr. Winters, spent 103.6 hours and his associates spent 54.5 hours.

"The determination of reasonable attorney fees is committed to the sound discretion of the trial court." *Olson v. Cohen*, 106 Cal. App. 4th 1209, 1217 (Ct. App. 2003). The inquiry into reasonable attorney fees begins with the 'lodestar,' which is "the number of hours reasonably expended multiplied by the reasonable hourly rate." *PLCM Grp., Inc. v. Drexler*, 22 Cal. 4th 1084, 1095 (2000). "The reasonable hourly rate is that prevailing in the community for similar work." *Id.* The factors the court should consider to determine whether or not the attorney fees are reasonable are: the nature of the litigation, the amount involved in the litigation, the skill employed in handling the litigation, the attention given, the success of the attorney's efforts, the attorney's learning and experience, the intricacies and importance of the litigation, the labor necessary, and the time consumed. *Olson*, 106 Cal. App. 4th at 1217.

Here, Mr. Winters' usual hourly rate is $650, but he agreed to charge $500 per hour

for his time; he also charged $350 per hour for his associates' time, and $65 an hour for paralegal time. (MTN 7.) Defendant does not oppose Mr. Winters' hourly rate. "In the absence of opposing evidence, the proposed rates are presumed reasonable." *Velez v. Wynne*, 220 Fed. App'x 512, 515 (9th Cir. 2007) (quoting *Cortes v. Metro Life Ins. Co.*, 380 F. Supp. 2d 1125, 1129 (C.D. Cal. 2005)). The Court thus presumes the rates are reasonable at the start. Plaintiff is an attorney and approved the rates before he suffered from his current afflictions; thus, he had some familiarity with reasonable rates in the San Diego, California market. (MTN 8.) Additionally, Guardian *Ad Litem* Kenneth J. Gerard has reviewed these fees and finds them reasonable. (*Id.* at 7 (citing Declaration of Kenneth J. Gerard, ECF No. 76-4, ¶ 3).) Accordingly, the Court finds Mr. Winters' hourly rate, as well as his associates' and paralegals' time to be reasonable.

Next, the Court must determine the number of compensable hours Mr. Winters and his staff reasonably expended representing Plaintiff. "The fee applicant bears the burden of documenting the appropriate hours expended in the litigation and must submit evidence in support of those hours worked." *Gates v. Deukmejian*, 987 F.2d 1392, 1397 (9th Cir. 1992) (citing *Hensley v. Eckerhart*, 461 U.S. 424 433, 437(1983)). The Court "should exclude from [the] initial fee calculation hours that were not 'reasonably expended.'" *Hensley*, 461 U.S. at 434. Hours are not "reasonably expended" if they are "excessive, redundant, or otherwise unnecessary." *Id.*

The Court has reviewed Mr. Winters' and his associates and staff billing records and finds them reasonable. There is no evidence of block billing or excessive or redundant charges. (*See* Ex. J, ECF No. 76-3, at 26–32.) The Court calculates the lodestar for each attorney and staff as follows:

- Winters: 103.6[2] hours x $500 = $51,800
- Capielo: 3.3 hours x $350 = $1,155

---

[2] The billing entries submitted by Plaintiff's counsel listed Mr. Winter's hours as 101 hours total. (ECF No. 76-3, at 30.) This appears to be an error. A proper accounting of all listed hours yields 103.6 hours, which multiplied by $500 results in the $51,800 that Plaintiff's counsel billed.

- Ball: 51.2[3] hours x $350 = $17,920
- Paralegal: 8 hours x $65 = $520

The Court does not adjust the lodestar amount. The Court finds the attorney's fees to be fair and reasonable and **AWARDS** $51,395.00 to Winters and Associates.

## III.    Other Costs and Expenses

### A. *Litigation Costs*

Plaintiff's counsel requests $3,697.00 for costs owed to Winters and Associates. (MTN 9.) The litigation costs incurred in the matter total $17,127.00. (*Id.*) Plaintiff previously paid $12,500.00 for costs and the remaining retainer of Expert Dan Jacobson was credited to the account in the amount of $930.00. (*Id.*) Plaintiff's counsel also request $2,937.50 for costs owed to Steve Hill Construction Consulting, Inc., for estimating repairs. (*Id.*)

Reasonable expenses and court costs to be paid out of the settlement also must be approved by the court. Cal. Prob. Code § 3601. The Court finds the remaining costs to be reasonable.

### B. *Guardian* Ad Litem *Costs*

Plaintiff's counsel requests that the services of Kenneth J. Gerard be reimbursed in the amount of $4,275.00. (MTN 9.) California Code of Civil Procedure section 373.5 provides "[t]he reasonable expenses of the guardian ad litem, including compensation and counsel fees, shall be determined by the court and paid as it may order, either out of the property or by plaintiff or petitioner." The Court has reviewed the guardian *ad litem*'s costs and finds them to be reasonable.

/ / /

/ / /

/ / /

---

[3] The billing entries submitted by Plaintiff's counsel listed Attorney Ball's hours as 50.5 hours total. (ECF No. 76-3, at 31.) This also appears to be an error. A proper accounting of all listed hours yields 51.2 hours, which multiplied by $350 results in the $17,920 that Plaintiff's counsel billed.

14-CV-2474 JLS (JMA)

**CONCLUSION**

In light of the foregoing, the Court **GRANTS** Plaintiff's unopposed Motion, (ECF No. 76). **IT IS HEREBY ORDERED, ADJUDGED**, and **DECREED** that:

1. Plaintiff Stephen Mugglebee is entitled to bring this action and Kenneth J. Gerard, as Guardian *Ad Litem* is entitled to proceeds of this settlement;

2. All issues raised by this proposed Settlement have been submitted to this Court and Plaintiff knowingly has waived his right to trial and appeal;

3. The Court approves the settlement amount of $170,000.00 and approves the distribution of said amount;

4. The Court approves payment of attorney's fees in the amount of $51,395.00 and reimbursement of costs incurred in the amount of $3,697.00 to Winters & Associates;

5. The Court approves payment of guardian *ad litem* fees in the amount of $4,275.00 to Kenneth J. Gerard; and

6. The Court approves payment of fees and costs in the amount of $2,937.50 to Steve Hill Construction Consulting, Inc.

This Order concludes litigation in this matter. The Clerk **SHALL** close the file.

**IT IS SO ORDERED.**

Dated: March 21, 2018

Hon. Janis L. Sammartino
United States District Judge

10